**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**SELENA E. MOLINA**
**MASTER IN CHANCERY**

**LEONARD L. WILLIAMS JUSTICE CENTER**
**500 NORTH KING STREET, SUITE 11400**
**WILMINGTON, DE 19801-3734**

Final Report: July 29, 2022
Date Submitted: April 19, 2022

Ross C. Karsnitz, Esquire
David C. Hutt, Esquire
Morris James Wilson
Halbrook & Bayard LLP
107 W. Market Street
Georgetown, DE 19947

Paul G. Enterline, Esquire
Paul G. Enterline, Attorney at Law
113 S. Race Street
Georgetown, DE 19947

Dean A. Campbell, Esquire
The Law Office of Dean A. Campbell, LLC
110 W. Pine Street
Georgetown, DE 19947

Jessie R. Benavides, Esquire
Parkowski, Guerke & Swayze, P.A
116 W. Water Street
Dover, DE 19903

Richard E. Berl, Jr., Esquire
Hudson, Jones, Jaywork & Fisher, LLC
34382 Carpenter's Way, Suite 3
Lewes, DE 19958

  Re: *Warren, et al. v. Williamson, et al.*
    C.A. No. 2018-0609-SEM

Dear Counsel:

Pending before me is a contested motion to intervene in a partition action.

There is no dispute that the moving parties have an interest in the property at issue.

The only dispute is timeliness—whether the moving parties sat on their rights and

waited too long to move to intervene. I find they did not. Although the motion

comes years into this litigation, it is not untimely under the totality of the

circumstances. I recommend the motion be granted and the moving parties be joined as respondents. This is my final report.

## I.  BACKGROUND[1]

This dispute concerns property owned by the late Addie Hester Revell (the "Decedent"), who passed on January 20, 1988.[2]  The Decedent was survived by her four children, Vivian Leifert, Nina Warren, Jewel Preston Revel, and Hugh Revell (together, the "Revell Heirs") and passed intestate, without a will.[3]  Thus, the Decedent's real property of approximately 50 acres of land in Sussex County (the "Property") passed in equal shares to the Revell Heirs.[4]

Since the Decedent's death, the Revell Heirs have taken steps to subdivide the Property and separate their joint interests. The first division was in 1999, when a one-acre parcel, labeled "Parcel 6.04," was taken from the whole and devised to Nina Warren and Judy Timmons.[5]  Then in 2007, the Revell Heirs, or some subset of them, hired Coast Survey, Inc. to subdivide the Property further into what is now

---

[1] The facts in this report are taken from the parties' pleadings, specifically the petition, the answers, the counterclaim, and the answer to the counterclaim. *See* Docket Items ("D.I") 1, 15, 16, 19. It has also been represented that as far back as the 1940s, the family involved in this action has spelled their last name two different ways, Revel and Revell. D.I. 1 n. 1. I endeavor to use each individual's preferred spelling of their last name, despite my typical preference for internal consistency in my reports.

[2] D.I. 1 ¶ 12.

[3] *Id.* ¶ 13.

[4] *Id.* ¶ 15. The Property now consists of six Sussex County tax parcels, referred to as "the East Parcel," "Parcel 6.00," "Parcel 6.01," "Parcel 6.02," "Parcel 6.03," and "Parcel 6.04." *Id.*

[5] *Id.* ¶ 17.

known as "Parcel 6.00," "Parcel 6.01," "Parcel 6.02," and "Parcel 6.03," leaving a portion undivided (the "East Parcel").[6] Coast Survey, Inc. prepared a subdivision plot, dividing the Property accordingly.[7] But, in dispute, is whether the Revell Heirs agreed that the four divided parcels (excluding the East Parcel) would each be conveyed to one of the Revell Heirs (the "2007 Agreement").[8]

The Revell Heirs took steps toward completing the 2007 Agreement, to the extent it was ever reached, but it was never fully consummated. It appears, only Parcel 6.01 was conveyed as contemplated—it was deeded to Nina Warren and Judy Timmons on March 24, 2007.[9] And, although an attorney prepared deeds for the remaining parcels, disputes arose, and the deeds were never signed.[10]

This limbo period lasted for several years. In the interim, still without final resolution on the remaining parcels, two of the Revell Heirs passed. Hugh Revell died intestate on June 17, 2009, survived by his wife and five children (the "Hugh Heirs").[11] Jewel Preston Revel died on July 9, 2017, survived by two heirs, Ricky Preston Revel and Ruby Revel Williamson.[12] Jewel Preston Revel also had two

---

[6] *Id.* ¶ 19. The answer contends that Coast Survey, Inc. may have been hired by only one of the Revell Heirs. D. I. 15 ¶ 19.
[7] D.I. 1 ¶ 21.
[8] The Petitioners pled the existence of the 2007 Agreement. *Id.* ¶¶ 23-25. The Respondents deny that the 2007 Agreement was ever reached. D.I. 15 ¶ 25.
[9] D.I. 1 ¶ 27.
[10] *Id.* ¶ 29.
[11] *Id.* ¶ 13.
[12] *Id.* ¶ 14.

children, Star Ann VanVorst and Ray Revel, who predeceased him.[13]  Jackson VanVorst and James VanVorst (together, the "Intervenors") are the heirs of Star Ann VanVorst.[14]

The parties in this case are the Decedent's descendants.  The Decedent's surviving children, Vivian Leifert and Nina Warren, initiated this action, joined by Ms. Warren's granddaughter Tracy Legates and Jewel Preston Revel's son, Ricky Preston Revel (the "Petitioners").[15]  Through their petition filed nearly four (4) years ago, the Petitioners seek to enforce the 2007 Agreement and partition the remaining East Parcel by sale.  Therein named as respondents are Ruby Revel Williamson, the other heir of Jewel Preston Revel, and the Hugh Heirs (the "Respondents").  The Respondents contest the existence of the 2007 Agreement and seek partition of the Property in kind.[16]

---

[13] *Id.* n. 2.

[14] Although designated as heirs of Star Ann VanVorst's estate, it appears the Intervenors were excluded from inheriting an interest Jewel Preston Revel's estate because Star Ann VanVorst predeceased her father and his will, it appears, excluded pre-deceased heirs. *Id.* The Intervenors indicated that they would challenge this provision of Jewel Preston Revel's will, but no such challenge was ever filed. *Id.*

[15] A suggestion of death was filed on May 17, 2022, for Nina Warren, who died on April 21, 2022. D. I. 42. Tracy Legates is Ms. Warren's intestate heir and is already amongst the Petitioners. *Id.*

[16] D.I. 15 ¶ 48. On November 29, 2018, the Respondents, other than Ms. Williamson, filed an answer and counterclaim, seeking an accounting for funds in an account established by the Revell Heirs for income generated by the Property.  D.I. 15. The Petitioners filed an answer to the counterclaim on December 17, 2018. D.I. 19.  Ms. Williamson filed her own answer on November 30, 2018, which did not contain any counterclaims. D.I. 16.

Originally assigned to Master Griffin, this action was scheduled for trial in December 2019, but the parties agreed to settled the matter at mediation.[17] The parties executed a settlement agreement on November 21, 2019 (the "Settlement Agreement").[18] The Settlement Agreement called for a portion of the Property to be sold and for the net proceeds to be distributed amongst the parties.[19] This litigation was then stayed, pending performance of the Settlement Agreement.[20]

For the next year and a half, the docket remained quiet. On May 28, 2021, Master Griffin requested a status report from counsel.[21] Counsel for the Petitioners responded on June 8, 2021, informing Master Griffin that before closing on the contemplated sale a title issue arose.[22] Counsel sent another letter on January 6, 2022, identifying the Intervenors as parties potentially having an interest in the Property, because they are the great-grandchildren of the Decedent and their direct ascendants have all passed.[23]

---

[17] D.I. 18.
[18] D.I. 24.
[19] *Id.*
[20] D.I. 26.
[21] D.I. 27.
[22] D.I. 28. Counsel stated that Ruby Revel Williamson would make a filing with the Court to help resolve the title issue, but no such filing was ever made. *Id.*
[23] D.I. 29. Counsel for the Petitioners requested that the Intervenors' counsel advise him of the Intervenors position by January 20, 2022. *Id.*

On January 26, 2022, Ms. Williamson, one of the Respondents, filed a motion to dismiss for failure to join the Intervenors as indispensable parties.[24] The Intervenors moved to intervene shortly thereafter on February 28, 2022 (the "Motion").[25] The next day, Ms. Williamson withdrew her motion to dismiss, and this action was reassigned to me.[26]

I am now called upon to address the Motion. The Petitioners have no objection and agree that the Intervenors should be joined as additional respondents.[27] But Ms. Williamson opposes the Motion.[28] Despite her previous motion asserting that this case could not be justly adjudicated without the Intervenors, Ms. Williamson argues the Intervenors should not be permitted to join as respondents because the Motion was untimely and intervention would be prejudicial to the original parties and Ms. Williamson, particularly.[29] The Motion was fully briefed on April 19, 2022, and taken under advisement.[30]

## II. ANALYSIS

Under Court of Chancery Rule 24(a):

---

[24] D.I. 30.

[25] D.I. 32.

[26] D.I. 33-34. Interested parties Carrie Lingo and Michael M. Padgett, the would-be purchasers of a portion of the Property, also moved to intervene. D.I. 38. The motion was unopposed and granted on June 1, 2022. D.I. 43-44.

[27] D.I. 35.

[28] D.I. 36.

[29] *Id.*

[30] D.I. 39.

> Upon timely application anyone shall be permitted to intervene in an action: (1) When a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Intervenors claim an interest in the Property and, despite Ms. Williamson's characterization of that interest as "speculative," there has been no challenge to the right of the Intervenors to seek intervention. Rather, the only opposition is whether the Motion was a "timely application." In determining whether a motion to intervene is timely, I must consider four factors in the totality of the circumstances:

> (1) the length of time the movant knew or reasonably should have known of her interest before she petitioned to intervene; (2) prejudice to the existing parties due to failure to petition for intervention earlier; (3) the prejudice the movant would suffer if not allowed to intervene; and (4) the existence of unusual circumstances weighing either for or against intervention.[31]

I find these factors support intervention.

Ms. Williamson argues that the Intervenors knew of and sat on their rights for over three years. She further argues that permitting the Intervenors to join the action now will invalidate the Settlement Agreement and work a restart of this long-pending litigation. I disagree. Initially, I find that the Intervenors did not sit on their

---

[31] *Shawe v. Elting*, 2015 WL 5167835, at *2 (Del. Ch. Sept. 2, 2015).

rights for an unreasonable amount of time. When this action was filed in 2018, the Intervenors were under the impression that their disinheritance from Jewel Preston Revel's will precluded their interest in the Property, although they were exploring challenging such will. For whatever reason, the Intervenors did not move forward with that will challenge. It was not until the fall or winter of 2021, when they were informed of their potential rights by the counsel for prospective purchasers of a portion of the Property, that the Intervenors began to appreciate that they may have an interest in the Property under Delaware's anti-lapse statute, 12 *Del. C.* § 2313.[32]

Although the Intervenors do not provide a precise date for when they were made aware of their interest, the Motion was filed in February of 2022, about three-four months after the period of "fall or winter of 2021." Further, the Motion was filed just over one month after the date by which the Petitioners' counsel requested

---

[32] D.I. 39 ¶ 6. This argument reminds me of one for equitable tolling, where one assert that they reasonably relied on a fiduciary and their delay in asserting their rights should be excused until inquiry notice. *See In re Restated Revocable Tr. of Lawrence F. Conlin*, 2014 WL 242655, at *5 (Del. Ch. Jan. 21, 2014) ("Under the doctrine of equitable tolling, the statute of limitations is tolled when the plaintiff 'reasonably relies on the competence and good faith of a fiduciary.'") (citation omitted). *Cf. In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *6 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999) ("Under the theory of equitable tolling, the statute of limitations is tolled for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where a plaintiff reasonably relies on the competence and good faith of a fiduciary. Underlying this doctrine is the idea that 'even an attentive and diligent [investor] relying, in complete propriety, upon the good faith of [fiduciaries] may be completely ignorant of transactions that . . . constitute self-interested acts injurious to the [Partnership].' This doctrine tolls the limitations period until an investor knew or had reason to know of the facts constituting the wrong.") (citations omitted, alterations in original).

that the Intervenors clarify their position. Neither of these time periods are unreasonable or grounds to find the Motion is untimely.[33]

Turning to the second factor, prejudice to the existing parties, Ms. Williamson asserts that she will be prejudiced because her share of the Property will be reduced, and that intervention would void the Settlement Agreement. The Intervenors respond that they do not seek to disrupt the Settlement Agreement, rather they wish to receive their proper share under the Settlement Agreement. Although their involvement may well reduce Ms. Williamson's share, the prejudice to the Intervenors in being excluded from this action (the third factor) outweighs that to Ms. Williamson. Absent intervention, the Intervenors may be denied their proportionate share of the Property.

Lastly, the fourth factor concerns the existence of unusual circumstances weighing for or against intervention. This action has been pending since 2018, but has largely sat dormant as the parties worked to settle their disputes and consummate the Settlement Agreement. Unfortunately, the Settlement Agreement cannot be consummated without the involvement of the Intervenors. The party opposing intervention, Ms. Williamson, acknowledged as much in her motion to dismiss,

---

[33] *See Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 778846, at *5 (Del. Ch. Feb. 24, 2015) ("The cases finding untimeliness or expressing serious concern about unwarranted delay involved delays of between five and twelve months.").

where she argued the Intervenors were necessary and indispensable parties. There Ms. Williamson sought to dismiss this action and invalidate the Settlement Agreement in the Intervenors' absence. Then, when the Intervenors sought to join this action, Ms. Williamson argued she would be prejudiced by intervention, arguing the Intervenors would work an invalidation of the Settlement Agreement. This is an unusual and rapid change of position. And Ms. Williamson's timeliness arguments fail to acknowledge that, either way, the Property cannot be partitioned without the Intervenors' involvement. The totality of the circumstances support intervention.

## III. CONCLUSION

For the above reasons, I find that the Motion was timely and should be granted. Timeliness requires more than a simplistic look at the date an action is commenced versus the date intervention is sought. Context is important and, here, context makes clear that (1) the Intervenors did not unnecessarily delay in asserting their newly discovered interest, (2) the potential prejudice to the Intervenors outweighs that of the objecting party, and (3) the totality of the circumstances surrounding the request weigh in favor of intervention.

This is my final report and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Master in Chancery